IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TORI HOPKINS,[1] | § | |
| | § | No. 427, 2023 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 22-10-08TN |
| DEPARTMENT OF SERVICES | § | Petition No. 22-22280 |
| FOR CHILDREN, YOUTH AND | § | |
| THEIR FAMILIES (DSCYF), | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: April 4, 2024
Decided: June 10, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the no-merit brief and motion to withdraw filed by appellant's counsel under Supreme Court Rule 26.1(c), the appellee's response, the Child Attorney's response, and the Family Court record, it appears to the Court that:

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

(1) By order dated October 30, 2023, the Family Court terminated the parental rights of the appellant, Tori Hopkins, in her minor daughter, born in March 2021 (the "Child").[2] Mother appeals.

(2) On appeal, Mother's counsel has filed an opening brief and motion to withdraw under Rule 26.1(c). Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that Mother's appeal is wholly without merit. Counsel informed Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider. Mother has not provided any points for the Court's consideration. The appellee, the Delaware Department of Services for Children, Youth and Their Families (DSCYF), and the Child's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) In August 2021, DSCYF was alerted to Mother's possible substance abuse and opened a treatment case for her family. After police responded to an incident where Mother, who appeared to be under the influence, struggled to maneuver the Child out of her stroller, DSCYF filed for emergency custody of the

---

[2] The Family Court's order also terminated the parental rights of the Child's father. We refer only to facts in the record that relate to Mother's appeal.

Child and her older siblings.[3] With the filing of DFS's dependency-and-neglect petition, the mandated hearings ensued.[4] At the adjudicatory hearing, Mother stipulated to dependency based on her possible substance abuse and voluntarily consented to custody remaining with DSCYF. At the hearing, the parties agreed that the Child would be placed with her godmother.[5]

(4) At the January 2022 dispositional hearing, Mother testified that she had previously been diagnosed with bipolar disorder, depression, and anxiety and that she had been engaged in counseling services with Connections for three years. DSCYF presented the case plan that it had developed to facilitate Mother's reunification with the Child. The plan required Mother to: (i) complete a mental health evaluation and take her medication as prescribed; (ii) complete a substance abuse evaluation and comply with any recommended treatment; (iii) enroll in parenting classes; (iv) engage with a family interventionist through WrapAround Delaware; (v) obtain employment and, if necessary, to supplement her income with

---

[3] The dependency-and-neglect proceedings regarding the Child's older siblings are not at issue in this appeal.

[4] When a child is removed from her home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. P. Rs. 212-219.

[5] Later, Mother objected to the characterization of the placement resource as the Child's "godmother." Nevertheless, the record reflects that the placement resource's name was provided to DSCYF (presumably, by Mother) as a possible placement option from the outset of the dependency-and-neglect proceedings.

community resources to meet the economic needs of the family; and (vi) obtain and maintain stable housing. The Family Court found the case plan to be reasonable and adopted it as an order of the court.

(5) At the March 25, 2022 review hearing, the Family Court found that Mother was in partial compliance with her case plan: (i) she was attending counseling sessions (albeit, irregularly) and was consistently taking her prescribed medication; (ii) she was attending parenting classes; (iii) she was employed and had submitted pay stubs to DSCYF; and (iv) DSCYF had no concerns regarding her housing. However, Mother had not completed a substance abuse evaluation nor a mental health evaluation. DSCYF was also concerned because Mother was having inappropriate outbursts during her visits with the Child. The Child was doing well in her foster home and was meeting her developmental milestones. The Family Court found that DSCYF was making reasonable efforts to reunite the family and that the Child remained dependent in Mother's care.

(6) As of the June 3, 2022 review hearing, Mother: (i) was unemployed; (ii) had not completed a substance abuse evaluation; (iii) had been discharged from WrapAround Delaware on April 25, 2022, because the family interventionist felt threatened by Mother's behavior; and (iv) had not been visiting with the Child. At the conclusion of the hearing, the Family Court found that Mother was "regressing in any progress she [had] made toward alleviating or mitigating the causes

4

necessitating [the Child's] placement in foster care."[6]  The Child continued to do well in foster care.  The court found that DSCYF was making reasonable efforts to reunify the family and that the Child remained dependent in Mother's care.

(7)    On September 9, 2022, DSCYF moved to change the permanency goal from reunification to the concurrent goals of reunification and termination of parental rights for the purposes of adoption.  On November 15, 2022, the Family Court held another review hearing.  Mother was incarcerated on pending criminal charges and had not visited with the Child.  Although Mother had completed the parenting-class portion of her case plan, she had made no progress on its other components.  The Family Court noted that the friction between Mother and the DSCYF workers and Mother's recent arrests were negatively affecting her ability to focus on completing her case plan.  At the conclusion of the hearing, the Family Court scheduled a permanency hearing for December 2, 2023.

(8)    As of the December permanency hearing, Mother was still incarcerated and had not made any progress on her case plan.  Moreover, Mother had not been visiting with the Child and had not been engaged with DSCYF since her incarceration. The Child was thriving in her foster home, and her foster mother was a permanent placement option for the Child.  At the conclusion of the hearing, the

---

[6] App. to DSCYF's Answering Br. at B025.

Family Court granted DSCYF's motion to change the permanency goal from reunification to the concurrent goals of reunification and termination of parental rights for the purposes of adoption. In doing so, the Family Court observed that it was in the Child's best interests to grant the motion because Mother had completed only one component of her case plan since the plan was put in place in November 2021.

(9) On March 9, 2023, the Family Court held a post-permanency hearing. Mother had been released from prison the day before the hearing. She advised the court that: (i) she planned to complete the mental-health and substance-abuse components of her case plan while she was on probation; (ii) she wished to reengage with a family interventionist; and (iii) she intended to find employment. The Child continued to do well in foster care. At the conclusion of the hearing, the Family Court found that Mother had not made any progress on her case plan.

(10) The Family Court held another post-permanency hearing on May 18, 2023. As of the hearing, Mother was incarcerated for violating the terms of her probation. As part of her violation-of-probation sentence, Mother testified that she was engaged with the Road to Recovery Program, through which she intended to complete the mental-health and substance-abuse components of her case plan. Mother also advised the court that she intended to secure employment after she finished the Road to Recovery Program and was released to the work-release

program. The Child continued to do well in her foster home, and the foster mother was an adoptive resource.

(11) At the October 30, 2023, termination-of-parental-rights (TPR) hearing, the Family Court heard testimony from Mother, Mother's DSCYF treatment worker, and the Child's DSCYF permanency worker. DSCYF acknowledged that Mother had completed the parenting-class component of her case plan. However, the evidence presented at the TPR hearing fairly established that Mother: (i) was incarcerated at the Department of Correction's Hazel D. Plant Treatment Center and the Child was not permitted to live there; (ii) was unemployed; (iii) had not completed a substance abuse evaluation; (iv) had not completed a mental health evaluation despite DSCYF's repeated efforts to schedule one; and (v) in July 2022, Mother had been arrested for carrying a concealed deadly weapon, disorderly conduct, and terroristic threatening.

(12) Following the hearing, the Family Court issued a bench ruling terminating Mother's parental rights in the Child on the basis of her failure to plan and issued a written order summarizing its findings. This appeal followed.

(13) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[7] We review legal

---

[7] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

rulings *de novo*.[8] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[9] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[10] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[11]

(14) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[12] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[13] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[14] If the Family Court finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best

---

[8] *Id.* at 440.

[9] *Id.*

[10] *Id.*

[11] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[12] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[13] *Id.* at 537.

[14] 13 *Del. C.* § 1103(a)(5)(a)-(e) (listing additional conditions).

interests of the child.[15]  Both of these requirements must be established by clear and convincing evidence.[16]

(15)  Here, the Family Court found that DSCYF had proved, by clear and convincing evidence, that the termination of Mother's parental rights was appropriate based on her failure to plan adequately for the Child's physical needs or mental and emotional health and development[17] and that the Child had been in DSCYF custody for more than one year.[18]  The Family Court then examined the best-interests factors set out in 13 *Del. C.* § 722 and—giving particular weight to factors 4 (the Child's adjustment to her home, school, and community), 5 (the mental and physical health of the individuals involved), 6 (Mother's past and present compliance with her rights and responsibilities to the Child), and 8 (the parties' criminal histories)—found, by clear and convincing evidence, that termination of Mother's parental rights was in the Child's best interests.

(16)  Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts.  We

---

[15] *Shepherd*, 752 A.2d at 536-37.

[16] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

[17] 13 *Del. C.* § 1103(a)(5).

[18] *Id.* § 1103(a)(5)(b).

therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issues. We are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:


*/s/ Karen L. Valihura*
Justice